UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| JAMES L. HAMPTON | ) | |
|---|---|---|
| Plaintiff, | ) | Cause No. 04 C 4619 |
| | ) | |
| v. | ) | Magistrate Judge Geraldine Soat Brown |
| | ) | |
| HARTFORD LIFE INSURANCE COMPANY | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff James Hampton ("Hampton") and Defendant Hartford Life Insurance ("Hartford") have filed cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56 in this breach of contract action, which is based on Hartford's denial of a life insurance policy claim brought after the death of Hampton's daughter, Marian.[1] Marian Hampton died after she applied for life insurance and before any policy was issued. As the only beneficiary named on the application for insurance, Hampton brought suit against Hartford for the policy limits. Hartford claims that Marian Hampton was never insured, while Hampton claims that Marian Hampton had "interim" insurance. For the reasons set out herein, Hartford's motion is granted and Hampton's motion is denied.

## JURISDICTION

This court has jurisdiction based upon diversity. 28 U.S.C. § 1332. This case was removed

---

[1] To clarify between the plaintiff and the proposed insured, plaintiff James Hampton is referred to throughout as "Hampton," and Marian Hampton is referred to by full name.

1

to the federal court from the Sixteenth Judicial Circuit in Kane County, Illinois. [Dkt 1.] Hartford alleges, and Hampton has not denied, that it is a citizen of Connecticut because it is incorporated and has its principal place of business there. (Notice of Removal ¶ 2; Pl.'s Resp. Facts ¶ 2.)[2] James Hampton is an Illinois resident. (Pl.'s Resp. Facts ¶ 1.) The amount in controversy is in excess of $75,000. (*Id.* ¶ 3.) Accordingly, jurisdiction under 28 U.S.C. § 1332 is appropriate.

## PROCEDURAL BACKGROUND

Hampton's complaint alleges that Hartford wrongfully refused to pay insurance benefits on Marian Hampton's life insurance policy. (Compl. ¶ 12.) [Dkt 1.] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) for purposes of entry of final judgment as to the parties' cross-motions for summary judgment. [Dkt 38.]

## FACTUAL BACKGROUND

The facts are virtually undisputed. Plaintiff James Hampton is the father of Marian Hampton.

---

[2]The parties' respective Local Rule 56.1 statements and responses are cited as follows: Plaintiff's Statement of Material Facts Pursuant to Local Rule 56.1 ("Pl.'s Facts ¶ __")[dkt 53]; Defendant's Statement of Uncontested Facts Pursuant to Local Rule 56.1 ("Def.'s Facts ¶ __") [dkt 44]; and Defendant's Response to Plaintiff's Statement of Material Facts and Defendant's Additional Facts Pursuant to Local Rule 56.1(b)(3)(A) and (B) ("Def.'s Resp. Facts ¶ __") and ("Def.'s Add'l Facts ¶ __") [dkt 57]. This opinion cites Hartford's statements where Hampton failed in the current briefing to respond to Hartford's LR 56.1 statements. Such statements are admitted by Hampton for failure to dispute them. Statements not responded to or not controverted by specific references to the record are deemed admitted. No. Dist. Ill. Local Gen. R. 56.1(b)(3); *see Smith v. Severn*, 129 F.3d 419, 425-26 (7th Cir. 1997). Additionally, in each instance the statements were admitted by Hampton in an earlier filing: Plaintiff's Response to Defendant's Statement of Uncontested Facts Pursuant to LR 56.1(a)(3) and Plaintiff's Statement of Additional Facts That Require Denial of Defendant's Motion for Summary Judgment ("Pl.'s Resp. Facts ¶ __") [dkt 22], which were filed as part of an earlier summary judgment briefing that was withdrawn without prejudice. [Dkt 33.]

(Def.'s Resp. Facts ¶ 3.) On April 14, 1994, at her residence in Aurora, Illinois, Marian Hampton submitted her application for life insurance along with a check for $22.50 to her insurance agent, who was an agent of the G.F. Mann Agency, Ltd. (*Id.* ¶¶ 4, 6, 8).[3] A check was then issued from the G.F. Mann Agency, Ltd. to Hartford for $22.50, with the notation "Marian Hampton" written in the "explanation" box. (*Id.* ¶ 9.) Hampton was the sole beneficiary named on the application. (Def.'s Resp. Facts ¶ 5.)

The application consists of five form pages. The first page, entitled "Proposed Insured Information," asks for, in the first box, "Name of Proposed Insured." (Pl.'s Mot. Summ. J., Ex. 1, Part A.) [Dkt 50.] The second section is "Proposed joint insured/other covered insured information." (*Id.*) At the bottom of each page, the form states "Application continued." (*Id.* passim.) Finally, the applicant is asked to sign the last page, under "Agreement and Acknowledgment." (*Id.* at Part D.) The paragraph prior to the signature states:

> Each of the undersigned declares that: the statements and answers contained in this application are complete and true to the best of each person's knowledge and belief; and *each agrees that coverage can take effect only if the Proposed Insured(s) is/are alive and [illegible] answers material to the risk are still true and complete when the policy is delivered and paid for.* I/We agree that the statements and answers contained in this application still form the basis of any contract for life insurance that may be issued; and, a copy of this application shall be attached to and made part of the policy. I/We have received a copy of the Company Compliance Illustration for the life insurance applied for herein.

(*Id.* (emphasis added).)

Marian Hampton signed the "Agreement and Acknowledgment" above the words "Signature

---

[3]The record is unclear regarding both the exact name of the agent and whether he was independent of Hartford or was a licensed agent of Hartford. (*See, e.g.*, Pl.'s Resp. at ¶ 6; Def.'s Resp. Facts ¶¶ 4, 8.) But that is immaterial. There is no dispute regarding the agent's location, any of the acts attributed to the agent or that he was an agent for the G.F. Mann Agency, Ltd.. (*See, e.g.*, Def.'s Resp. Facts ¶ 4, 6, 8, 9; Def.'s Add'l Facts ¶ 25.)

of Proposed Insured." (*Id.*) The form was filled in to acknowledge that $22.50 has been received with the application. (*Id.*) Marian Hampton also signed an authorization for Hartford to obtain, release and disclose information, including her health condition, hospital confinements, outpatient treatments and other medical information. (*Id.*)

The application further provides that a conditional receipt may be given in certain circumstances, as follows:

WHEN CONDITIONAL RECEIPT CAN BE USED

An advance payment may be accepted and the Conditional Receipt may be given ONLY under the following conditions:

1. The advance premium is at least equal to the amount of the full first premium for the mode selected.
2. The answers in Part B, question 6e, 7 and 8 are 'No'.
3. The Proposed Insured(s) appear to be standard risks in all respects.
4. The Conditional receipt is given and the advance premium is collected only at the time the application is taken and signed.
5. The application does not contain a request for postdating.
6. The agent does not make an advance payment for the Proposed Insured or Applicant. If this is done, loss of the agent's license could result.
7. The proposed Insured(s) is/are 65 years old or less age last birthday.

(*Id.* at Part E.)

Marian Hampton did not receive a conditional receipt. (Def.'s Facts ¶ 11.)[4]

---

[4] Hampton argues that the fact that no conditional receipt can be found should be construed against Hartford, but he has failed to provide any factual basis for the court to find that a conditional receipt was ever issued. On the contrary, Hartford set forward facts, which Hampton earlier admitted and has not disputed in this round of filings, demonstrating that no conditional receipt was issued: (1) Marian Hampton's sister, Idatyna Smith, testified that she saw Marian Hampton give the insurance agent the application, but did not see the agent give her any document in return (Def.'s Facts ¶ 10); (2) Hartford's records indicate that the agent did not provide a conditional receipt (*Id.* ¶ 11); (3) Hampton has produced all relevant documents in his possession, and found no documentation in Marian's belongings regarding her application for insurance (*Id.* ¶¶ 13-14); (4) Hartford sent Hampton's counsel a letter dated approximately seven weeks after the death of Marian Hampton, stating that no conditional receipt was given on

Hartford has submitted a form conditional receipt of the sort used in 1994, although no such receipt was provided to Marian Hampton. (Def.'s Add'l Facts ¶¶ 27, 28; Def.'s Resp. to Pl.'s Mot. Summ. J., Ex. L, Aff. Judith L. White, Ex. 1 [dkt 55].) The conditional receipt states that "NO COVERAGE WILL BECOME EFFECTIVE PRIOR TO DELIVERY OF THE POLICY APPLIED FOR UNLESS AND UNTIL ALL THE CONDITIONS OF THIS RECEIPT HAVE BEEN FULFILLED EXACTLY: . . . (b) All medical examinations, test [sic], x-rays and electrocardiograms required by the Company must be completed and received . . . ." (White Aff., Ex. 1 ¶ 1.)

The conditional receipt also provides that "[i]f one or more of the conditions of paragraph 1 have not been fulfilled exactly, there shall be no liability on the part of the Company except to return the applicable payment in exchange for this Receipt." (*Id.* ¶ 4.) The conditional receipt does not specify what "test" is required, and indeed the form conditional receipt states only "test," singular. The exact meaning of "test" in this context is not material to the pending motions, however, because Hampton did not dispute Hartford's statement that Marian Hampton did not undergo the examinations Hartford required. (Def.'s Add'l Facts ¶ 30.)

Hartford required a medical examination, which includes blood and urine tests, before its underwriters would approve or issue Marian Hampton's life insurance policy. (Def.'s Resp. Facts ¶ 29, citing White Aff. ¶ 5.) Ms. Hampton did not undergo the blood and urine tests Hartford required. (Def.'s Add'l Facts ¶ 30.)

On May 1, 1994, two weeks after submitting her application for insurance, Marian Hampton was killed when she was struck in the head. (Def.'s Resp. Facts ¶ 12; Pl.'s Mot. Summ. J., Ex. 3.)

---

Marian Hampton's application (Def.'s Mem. in Supp. Mot. Summ. J., Ex. F [dkt 43]). Hampton has failed to demonstrate any genuine issue as to any of those facts.

On June 24, 1994, Hartford returned Marian Hampton's $22.50 check to Hampton, through Hampton's attorney, with a letter denying coverage. (Def.'s Resp. Facts ¶ 13.) Hartford's denial stated that no coverage had been issued to Marian Hampton because she had not completed blood and urine testing, and that coverage "can take effect only if the Proposed Insured(s) is/are alive and all answers material to the risk are still true and complete when the policy is delivered and paid for." (*Id.*; Pl.'s Mot. Summ. J., Ex. 4.)

Hampton does not contest that "[t]he only document produced by any party that could be cited as a basis for an insurance obligation is the application." (Def.'s Facts ¶ 14.) Marian Hampton's application file could not be found at Hartford's "dead" document storage. (Pl.'s Resp. Facts ¶ 23.) (The lawsuit was filed in the Kane County court on June 10, 2004 (Notice of Removal ¶ 1), ten years after Marian Hampton's death.) There are no documents related to the application for insurance other than those submitted to the court.

## ANALYSIS

### I. CHOICE OF LAW

Hartford argues, and Hampton does not dispute, that Illinois substantive law governs this decision.

It is undisputed that Hartford did not issue an insurance policy to Marian Hampton, and therefore there are no policy provisions to govern the choice of law here. A federal court sitting in diversity must look to the conflict of law principles of the forum state for the applicable substantive law. *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000) (*citing Klaxon Co.*

*v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). In Illinois, when an insurance policy lacks a choice of law provision, the court employs the "most significant contacts" test to determine the law governing the contract. *Jupiter*, 225 F.3d at 873. That test examines the location of the subject matter, the place of delivery of the contract, the domicile of the insured or the insurer, the place of the last act to give rise to the insurance contract, the place of performance, or any other place bearing a rational relationship to the contract. *Id.* (*citing Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.*, 655 N.E.2d 842, 845 (Ill. 1995)). The court examines all of the factors, but "the location of the insured risk is given special emphasis." *Jupiter*, 225 F.3d at 873 (citation omitted).

The subject matter – the insured risk – is Marian Hampton's life, and the parties agree that at all times she was a resident of Illinois (Def.'s Add'l Facts ¶ 24), and that she submitted her application in Illinois (Def.'s Resp. Facts ¶ 4).[5] Marian Hampton's domicile was Illinois. (Def.'s Add'l Facts ¶ 24.) The last act that could have given rise to the purported contract was either Marian Hampton's delivery of the application and check in Illinois or the agent's cashing of the check in Illinois and forwarding of the new check to Hartford. (Def.'s Resp. Facts ¶¶ 6, 9; Def.'s Add'l Facts ¶ 25.) The agency through which Marian Hampton's agent worked was in Illinois (Def.'s Add'l Facts ¶ 25), so those actions conducted by the agent would be centered in Illinois. Marian Hampton was killed in Illinois. (Def.'s Resp. Facts ¶ 12; Def.'s Add'l Facts ¶ 26.) It appears that all contacts were in Illinois, except for the domicile of the insurer. Hartford claims that it is a citizen of Connecticut. (Def.'s Facts ¶ 2.) Because the parties agree that the policy was never issued, the domicile of the insurer seems the least significant contact. Accordingly, Illinois substantive law governs this

---

[5]Hampton failed to respond to these additional facts set forth by Hartford, and they are therefore admitted pursuant to L.R. 56.1(b)(3)(C).

decision.

## II. LEGAL STANDARD

The court may properly grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must construe all facts and draw all reasonable and justifiable inferences in favor of the non-moving party. *Id.* at 255. The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met the initial burden, the non-moving party must designate specific facts showing that there is a genuine issue for trial. *Id.* at 324. The non-moving party must support its contentions with admissible evidence and may not rest upon the mere allegations in the pleadings or conclusory statements in affidavits. *Id*. *See also Winskunas v. Birnbaum*, 23 F.3d 1264, 1267 (7th Cir. 1994) (stating that the non-moving party is required to present evidence of "evidentiary quality" (*i.e.*, admissible documents or attested testimony, such as that found in depositions or in affidavits) demonstrating the existence of a genuine issue of material fact).

## III. DISCUSSION

Hartford claims that Marian Hampton was not insured; she had merely applied for insurance, did not complete the application process and ultimately did not receive coverage from Hartford. Hartford argues that an insurance application "is a mere offer," but does not create a contract until the insurer evaluates it and accepts, and that it did not accept Marian Hampton's offer to be insured.

Hampton argues that Marian Hampton was covered by "interim insurance" while Hartford processed the claim for her insurance, because she had paid her first month's premium, and the insurer had her money. Further, Hampton argues that Marian Hampton relied on her belief that she was insured, stopped shopping for insurance that day, and "must have" received some benefit from the first month's premium. That benefit, Hampton argues, is coverage.

### 1. *Was there a contract of insurance?*

In Illinois, "the law is well settled that an application for insurance is a mere offer and it creates no rights and imposes no duty on the insurer." *Omar v. St. Paul Fire & Marine Ins. Co.*, 529 N.E.2d 686, 689 (Ill. App. 1988). The insurance application may, in accordance with Illinois law, prescribe an effective date to coincide with delivery of the policy, and may provide that if the applicant dies prior to the performance of certain conditions, the policy is not effective. *Reynolds v. Guarantee Reserve Life Insurance Co.*, 358 N.E.2d 940, 943 (Ill. App. 1976).

Hampton has only the application to demonstrate that Hartford has issued Marian Hampton insurance coverage. Hampton has not provided receipts or other written documents (such as a policy or confirming letter) to demonstrate Hartford's acceptance of the "offer" of the application, nor has Hampton disputed Hartford's assertion that the application was merely an offer. Because that

application is a mere offer, and because Hampton has submitted no evidence to demonstrate acceptance, there is no proof that a contract was formed.

The application, furthermore, makes clear that it does not create a contract, and that it contains conditions precedent to the forming of a contract. The application provided an authorization to obtain medical information and continually refers to the applicant as the "proposed insured" throughout. (Pl.'s Mot. Summ. J., Ex. 1.) Additionally, the application states that "coverage can take effect *only if the Proposed Insured(s) is/are alive and [illegible] answers material to the risk are still true and complete when the policy is delivered and paid for*." (*Id*. at Part D (emphasis added).)

Marian Hampton died before Hartford processed her application, began medical underwriting, or determined if it would issue the policy. (Def.'s Facts ¶ 20; Pl.'s Resp. Facts ¶ 20; Pl.'s Mot. Summ. J., Ex. 3.) Hampton has simply not demonstrated that a contract was formed.

### 2. *Was Marian Hampton covered by "interim" life insurance?*

Hampton argues that a conditional receipt "should" have issued in exchange for the premium Marian Hampton submitted because she should get something for her money, and because she fulfilled the conditions for issuance of a conditional receipt. Hampton asserts (without citing any evidence), that Marian Hampton relied on her belief that she was insured, stopped shopping for insurance the day she turned in her application and check, and "must have" received some benefit from the first month's premium. Hampton supports his claim mainly with argument that "[t]he only logical interpretation of the present situation is that a contract for temporary or interim insurance arose when Marian Hampton submitted, and defendant accepted, the first month's premium." (Pl.'s Mot. Summ. J. at 3.)

Hampton relies upon an Indiana appellate decision, *Kaiser v. Nat'l Farmers Union Life Ins. Co.,* 339 N.E.2d 599 (Ind. App. 1976), and the discussion of *Kaiser* in *Burns v. Rockford Life Ins. Co.*, 740 F.2d 542, 545 (7th Cir. 1984). Both cases were decided under Indiana law. In *Kaiser*, the insurer had not only accepted a premium payment but had issued a conditional receipt to the proposed insured, which the court held created a contract for temporary or interim life insurance subject to rejection by the insurer, which had not occurred. 339 N.E.2d at 604. In *Burns*, the Seventh Circuit reversed a decision in favor of the insured, and distinguished the *Kaiser* case because *Burns* did not involve a purchase of temporary insurance. 740 F.2d at 545.

As Hartford properly points out, *Kaiser* is distinguishable because – aside from *Kaiser* being decided under Indiana law – a conditional receipt was issued to the proposed insured in that case, while no conditional receipt was issued to Marian Hampton.

Significantly, this court is bound to apply the substantive law of Illinois to this case, "as we believe the Illinois Supreme Court would apply it." *Liberty Mut. Fire Ins. Co. v. Statewide Ins. Co.*, 352 F.3d 1098, 1100 (7th Cir. 2003). It is true, as Hampton points out, that the Illinois Supreme Court has not ruled on the issue of conditional receipts and interim insurance, but the Illinois Appellate Court has. Accordingly, as the Seventh Circuit stated in *Liberty Mutual*, "we must estimate how the state supreme court would rule. . . . And the rulings of state appellate courts 'must be accorded great weight, unless there are persuasive indications that the state's highest court would decide the case differently.' *Id*. at 1100 (internal citations omitted).

The Illinois Appellate Court reviewed prior authorities under Illinois law in *Mijes v. Primerica Life Ins. Co.*, 740 N.E.2d 1160, 1163-1164 (Ill. App. 2000), a case similar to this one. In *Mijes*, the proposed insured submitted an application for life insurance and received a "Conditional Premium

11

Receipt," which contained language very similar to that of Hartford's form conditional receipt. 740 N.E. 2d at 1161-1162. The proposed insured did not submit the required blood and urine samples before leaving on a trip to Mexico, during which she was killed in an automobile accident. *Id.* at 1162. Reviewing the language of the Conditional Premium Receipt, the court determined that it "unambiguously provided there would be no insurance coverage to the Mijes' unless they met the coverage conditions, which included completing the medical tests requested by Primerica. The parties agree Maria did not submit blood and urine samples. She failed to perform a condition precedent." *Id*. at 1163. Importantly for this case, the court supported its conclusion by citing prior Illinois authority holding that unless the conditions precedent are met, there is no interim insurance coverage. *Id.* (*citing, inter alia, Garde v. American Family Life Ins. Co.,* 498 N.E.2d 292 (Ill. App. 1986); *Fields v. Franklin Life Ins. Co.*, 451 N.E.2d 930 (Ill. App. 1983).) Thus, in this case, had a conditional receipt been issued, Hartford's condition that Marian Hampton must have certain medical tests performed would still have been a condition precedent to temporary coverage that Marian Hampton did not satisfy.[6]

Hampton's argument that Marian Hampton "must have" received something for her payment of the first month's premium is similar to an argument rejected by the Illinois Appellate Court in *Reynolds*, 358 N.E.2d at 944. There the plaintiff argued that "it is unconscionable for the defendant to take a check from the proposed insured, cash it for its own use and refuse to provide any coverage

---

[6]The apparent difference between Illinois and Indiana law becomes less dramatic when the difference in the conditional receipts being construed in *Kaiser* and *Mijes* is considered. In *Kaiser,* a 1976 case, the court was concerned that "the complicated and legalistic phrasing" of conditional receipts tended to suggest to the applicant that he "has reason to believe that he is insured." 339 N.E.2d at 601. In *Mijes,* a 2000 case, as in the present case, the conditional receipt expressly and conspicuously stated that there was no coverage until all of the insurer's requirements, including medical tests, have been satisfied. 740 N.E.2d at 1163.

to the proposed insured in return." *Id.* The Illinois Appellate Court stated that there was "no merit to this contention," and further stated:

> It is not conduct that is harsh or shocking to the conscience for an insurance company to accept prepayment of premiums for proposed policies of insurance which clearly will not provide coverage until issued or delivered where the receipt for that prepayment expressly contains a provision that if the company declines to issue a policy[,] the amount received will be refunded. Only hindsight in an unusual and unfortunate situation makes it appear so.

*Id.*

Hampton has presented nothing to suggest that the Illinois Supreme Court would not follow the established line of Illinois law set out in *Mijes*. Applying Illinois law to this case results in the conclusion that there was no "interim or temporary coverage." No conditional receipt was issued. Although Hampton argues that a conditional receipt *should* have issued, the application does not require Hartford to issue a conditional receipt upon payment. On the contrary, the application provides that the insurer *may* issue such a receipt only if the requirements are met. (Def.'s Resp. Facts ¶28, White Aff., Ex. 1.) Hampton's unsupported claim that Marian Hampton was a "standard risk" – which is disputed by Hartford, is irrelevant.[7] Even had a conditional receipt been issued, there would have been no interim coverage here because the conditions for coverage specifically set out in the form conditional receipt were never satisfied.

---

[7]In claiming that Marian Hampton met all the conditions in the application in order to receive a conditional receipt, Hampton claims Marian Hampton was a standard risk in all respects, but provides no factual support for that claim or any basis to define "standard risk." (Pl.'s Facts ¶ 11.) Defendant contests that assertion, citing deposition testimony from Hampton's sister that Marian was "obese," and stating that obesity is not standard. (Def.'s Resp. Facts ¶ 11.)

## CONCLUSION

Although Hampton's loss of his daughter at the tragically young age of 21 is undoubtedly sad, the application of the law to the facts of this case requires a conclusion that Hartford's motion for summary judgment [dkt 42] is granted, and Hampton's motion for summary judgment [dkt 50] is denied. Judgment is hereby entered in favor of the defendant Hartford Life Insurance Company. This is a final order.

IT IS SO ORDERED.

_____
Geraldine Soat Brown
United States Magistrate Judge

January 28, 2008.